[Cite as *State v. Taylor*, 2013-Ohio-1074.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2011-CA-67 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-400 |
| v. | : | |
| | : | |
| BRADY TAYLOR, III | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of March, 2013.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172 by STEPHANIE R. HAYDEN, Atty. Reg. #0009172, Greene County Prosecutor's Office, 55 Greene Street, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. #0013841, 125 West Main Street, Suite 201, Fairborn, Ohio 45324
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Brady Taylor appeals his conviction for robbing a pizza delivery woman at

gunpoint of $33 and a pizza. A jury found Taylor guilty of third-degree robbery, R.C. 2911.02(A)(3). The trial court imposed a 4-year prison term and entered a judgment of conviction. Later on the day of sentencing, the court vacated the judgment and entered a new judgment of conviction. The court "resentenced" Taylor because it realized that the sentencing statute had recently been amended such that the maximum possible prison term that could be imposed on Taylor was 36 months. The revised judgment of conviction imposes the 36-month maximum.

{¶ 2}   Taylor moved for a new trial under Crim.R. 33(A)(3), arguing that trial counsel was surprised by rebuttal testimony of Officer Donald Slusher, one of the officers who arrested Taylor shortly after the offense, that he found $33 on Taylor. Several other subjects were in the car in which Taylor was found. Before trial, the State had given counsel a log from the campus police showing that the police recovered $33 in cash but not specifically identifying from whom, of the several persons in the car, the cash was removed.   Trial counsel averred, in an affidavit attached to the motion, that prior to trial she had asked the campus police for the identity of the person who had the money but they did not respond. Counsel further averred that she spoke with one of the other subjects, Geno Hoover, and that he told her that Taylor did not have any cash on him that night but that the officer who was with Officer Slusher, Officer Jesse Rubio, removed $33-$35 from his (Hoover's) wallet. Counsel averred that Officer Rubio and Hoover had been subpoenaed to testify for the defense but that neither did. Taylor asserted that the witnesses failed to appear, and therefore, he argued, he could not rebut Officer Slusher's testimony about finding the cash on Taylor. Taylor also moved for a new trial under R.C. 2945.79(D) and Crim.R. 33(A)(4), arguing that

there was no evidence that he used or threatened the immediate use of force against the victim, as R.C. 2911.02(A)(3) requires.[1]   The trial court denied the motion for new trial without holding a hearing.

{¶ 3}   Taylor appealed. We affirm the determination of guilt, however we vacate the admittedly improper sentence, and remand for resentencing.

{¶ 4}   Five assignments of error are presented for review. The first alleges that Taylor's robbery conviction is against the weight of the evidence. The second alleges ineffective assistance of Taylor's trial counsel. The third alleges that the trial court should have held a hearing on Taylor's motion for new trial. The fourth assignment of error alleges that Taylor's sentence is unlawful, and the fifth alleges that his sentence is an abuse of the trial court's discretion.

### A. The Weight of the Evidence

{¶ 5}   The first assignment of error alleges that Taylor's conviction for robbery is against the weight of the evidence. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a weight-of-the-evidence challenge, the appellate court, "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost

---

[1] R.C. 2911.02(A)(3) provides: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * Use or threaten the immediate use of force against another."

its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). To warrant a new trial the evidence must weigh heavily against the conviction. *Id.*, quoting *Martin* at 175.

{¶ 6} Carley Neiswender testified as follows: At 2:18 a.m., on July 15, 2011, "Jamal" called Cousin Vinny's Pizza in Xenia, Ohio, and ordered a pizza to be delivered to Green Hall on Central State University's campus. Around 2:30 a.m., Neiswender got out of her car near Green Hall with the pizza. A man, who she later learned was Kingsley Odei, approached and appeared to be searching his pockets for money. While the two were standing there, someone with a red bandana covering much of his face and a cap pulled down low, walked out of the woods nearby, pointing a gun at them, and told them to get on the ground. The gunman told Neiswender to give him her money, and she threw the $33 she had on the ground. He then told Odei to go back to his dorm and told Neiswender to walk away. She ran to her car and called 911. As Neiswender pulled away, she saw the gunman pick up the pizza and walk towards campus. She could not identify the gunman because of the red bandana over most of his face and the hat that was pulled down. Neiswender noted that the gunman was tall and skinny.

{¶ 7} Corroborating her testimony was the apparent customer, Kingsley Odei. Odei explained that he was visiting from Chicago and that he had driven Taylor, Patrick Jones, and Geno Hoover to the campus that night in his car. Odei said that Taylor had told Jones to order a pizza and that Jones, identifying himself as "Jamal," used his (Jones's) cell phone to order. Right after, said Odei, Taylor got out of the car and walked behind it. Odei said that he could

see that Taylor was bent over towards the car but could not see what Taylor was doing. Odei said that he (Odei) used his cell phone to call someone in Green Hall and then left the others in the car and walked into the hall. When he came out, he met Neiswender. While they were standing outside, a man wearing a red scarf and a red and black hat came up to them pointing a gun. Odei testified that he knew the gunman was Taylor because earlier he had seen the red scarf hanging out of Taylor's pocket. Odei also said that he recognized the gunman's shoes and voice as that of Taylor. Odei also said that the gunman was tall and skinny, like Taylor. Odei testified that he did not call police because he did not have his cell phone. He said that he didn't know how he had lost it.

{¶ 8} Officer Slusher testified that he and Officer Rubio responded to Neiswender's robbery call. They saw a car start to drive away without any lights on, and they noticed that the car's rear license plate was obstructed. They pulled the car over. Officer Slusher said that he found that the car's license plate was covered by a piece of notebook paper. He said that there were three men in the car–Odei, Jones, and Taylor–and that he searched each of them. On rebuttal, Slusher testified that on Taylor he found a red bandana and $33 in cash.

{¶ 9} Jones and Taylor himself testified for the defense. Taylor said that he did not ask Jones to order a pizza and that the police did not find $33 on him. Jones said that he did not order a pizza that night and that Taylor had nothing to do with the robbery. Jones's description of the events that night does not include ordering a pizza. However, on cross examination, the State confronted him with phone records showing that his cell phone was used to order a pizza that night at 2:18 a.m. Jones denied calling the pizza place and said that

he didn't know whether anyone else used his phone to make that call.

{¶ 10} Taylor makes his weight-of-the-evidence challenge on three grounds. One, Taylor points out that Neiswender could not identify him as the man who robbed her. It is accurate that she could not facially identify Taylor–his face was covered with a bandana and a hat. That she could not is immaterial. It is Officer Slusher's and Odei's testimony that establishes Taylor as the gunman. Two, Taylor asserts that Odei's testimony cannot be believed because Odei said he got into the car with the man he also said just robbed him at gunpoint, and because Odei testified that he had his cell phone before the robbery but then after the robbery he didn't have it. We do not think that Odei's credibility is called into question by this testimony. Officer Slusher's testimony indicates that Odei was scared and did not know what was going on or what he should do. Also, as he was visiting from Chicago, Odei had nowhere else to go. Moreover, the car was Odei's. As for the cell phone testimony, there is no evidence that Odei did have his cell phone after the robbery. Even if Odei's credibility is undermined by any of this testimony,  that was a matter for the jury to resolve. Three, Taylor points to his and Jones's testimony that Taylor had nothing to do with the robbery. Taylor is, of course, a decidedly biased witness. And Jones's credibility is undermined by the State's dispositive evidence that his cell phone was used to make the call to the pizza place.

{¶ 11} We conclude that the evidence does not weigh–let alone weigh heavily– against Taylor's conviction.

{¶ 12} The first assignment of error is overruled.

## B. Ineffective Assistance of Counsel

{¶ 13} The second assignment of error alleges that Taylor's trial counsel rendered him ineffective assistance. The performance of counsel is constitutionally deficient if it is objectively unreasonable and it results in prejudice to the defendant. *State v. Thrasher*, 2d Dist. Greene No. 06CA0069, 2007-Ohio-674, ¶ 10, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. King*, 2d Dist. Montgomery No. 18463, 2002 WL 1332565, *5 (June 14, 2002), citing *Strickland*. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different." *Thrasher* at ¶ 10, citing *Strickland* and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "Notwithstanding the particular failure alleged, the threshold inquiry is whether prejudice resulted." *King* at *5, citing *Strickland*.

{¶ 14} Taylor argues that his trial counsel was ineffective because she failed to object to the use and admission of Neiswender's and Odei's statements to the police. To Neiswender, the prosecutor gave her statement and asked her to review it. Then without mentioning the statement, the prosecutor continued the direct examination. To Odei, the prosecutor gave his written statement and asked him to read it out loud, which he did. Later, both written statements were admitted into evidence. Taylor contends that counsel should have objected when Neiswender's written statement to the police was admitted into evidence and when Odei read his written statement to the jury. The rules of evidence, Taylor asserts, do not permit a

witness's written statements to be used to support the witness's oral testimony.

{¶ 15} Assuming that the use of the written statements here constitutes error, Taylor has failed to show that not objecting prejudiced him. Given the overwhelming evidence of Taylor's guilt, even if counsel had objected, there is little chance that Taylor would have been acquitted. Furthermore, counsel was not necessarily ineffective because she did not object. The decision of counsel not to object may be "a matter of reasonable trial strategy" that tries to avoid bringing a matter to the jury's attention. *King* at *5. Such a decision does not constitute deficient performance. *Id*.

{¶ 16} Taylor also argues that counsel was ineffective because she was not fully prepared for trial. He cites counsel's affidavit in support of the motion for new trial as showing that counsel went to trial without knowing on whom the $33 was found. Taylor says that counsel should have filed a motion for more discovery, telling the trial court that the Central State University police had not responded to her questions. Taylor also cites the affidavit as showing that counsel should have called Geno Hoover as a witness. Taylor says that it is clear from the affidavit that Hoover had valuable information that would have helped Taylor in his defense.

{¶ 17} Counsel avers in the affidavit that she received a copy of the log recording the items that police found on the men in the car. A copy of the log is attached to the affidavit. One of the items listed is $33 in cash–"[o]ne ten dollar bill, four five dollar bills, three one dollar bills." At trial, Officer Slusher testified that he found $33 in cash on Taylor. Counsel knew that the money had been found on one of the men. It would not be unreasonable to proceed with the trial having prepared for evidence that the money was found on Taylor. With

respect to Hoover, counsel avers that the log says that it records the items that police found on Taylor, Odei, Jones, and Hoover. Counsel further avers that she talked to Hoover and he told her that Officer Rubio removed $33-$35 from his (Hoover's) wallet and that Taylor did not have any cash on him.

{¶ 18} Taylor has again failed to show prejudice. Given the overwhelming evidence of Taylor's guilt, even if counsel had known that the money was found on Taylor or even if Hoover had testified, there is little chance that Taylor would have been acquitted. Moreover, "the failure to call a witness to testify ordinarily is a matter of trial strategy that will not be second-guessed by a reviewing court." *State v. Mills*, 2d Dist. Greene No. 2002-CA-114, 2004-Ohio-267, ¶ 8, citing *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). Counsel here may have decided not to call Hoover because he had been as a passenger in the car before the robbery and she was worried that his testimony would undermine Jones's testimony and, ultimately, not be credible on the issue of where the money was found. *Compare id*. (saying that defense counsel could reasonably have not called the defendant to testify in his own defense because counsel was concerned about his credibility). Jones testified that he dropped off Odei and Hoover and only Odei came back, meaning that Hoover was not in the car when the police arrived. Indeed, Officer Slusher testified that only Odei, Taylor, and Jones were in the car. We cannot say that counsel's performance was deficient.

{¶ 19} The second assignment of error is overruled.

## C. Hearing on the Motion for New Trial

{¶ 20} The third assignment of error alleges that the trial court erred by not holding a

hearing on Taylor's motion for new trial. "[T]he trial court's decision on whether the motion for a new trial warrants a hearing will not be disturbed on appeal absent a clear showing that the court abused its discretion." (Citation omitted.) *State v. Johnson*, 155 Ohio App.3d 145, 2003-Ohio-5637, 799 N.E.2d 650, ¶ 14 (8th Dist.).

**{¶ 21}** Taylor argued in his motion that trial counsel was surprised by Officer Slusher's rebuttal testimony that he found $33 on Taylor. He asserts that he was unable to rebut this testimony because Officer Rubio and Hoover did not comply with their subpoenas. Taylor argues that the motion and affidavit warranted a hearing. He points out that counsel averred that she had difficulty discovering from whom the police recovered the money. Whether the money was found on him, Taylor says, was a key conflicting fact. It may have been the basis on which the jury would have questioned Officer Slusher's testimony.

**{¶ 22}** Defense counsel did not ask for a hearing. Moreover, in the trial court's written decision, it points out that counsel at least knew that the police had found $33 on one of the men in the car. The court also pointed out that counsel said at trial that she would not be calling Officer Rubio (who had testified for the State) to testify on direct for the defense and he was excused. Lastly, the court pointed to the evidence that Hoover was not in the car when the police arrived, so his testimony on the issue would shed little light. We do not think that the trial court acted unreasonably by not holding a hearing sua sponte.

**{¶ 23}** The third assignment of error is overruled.

## D. The Sentence

**{¶ 24}** The fourth assignment of error alleges that Taylor's sentence is unlawful. On

September 30, 2011, Ohio H.B. 86 went into effect and amended the sentencing statute with respect to the prison terms that may be imposed for third-degree robbery. Under the former law, Taylor could have been sentenced to prison for 1 to 5 years. But under the current law, he can be sentenced to 9, 12, 18, 24, 30, or 36 months. R.C. 2929.14(A)(3)(b).[2] At the sentencing hearing, the trial court sentenced Taylor to 4 years in prison. The court entered a judgment of conviction that reflected this sentence. Later, the trial court vacated that judgment and entered a new judgment of conviction, which begins, "This matter is before the Court for resentencing under House Bill 86." The new judgment reflects a prison sentence of 36 months. The court did not hold a resentencing hearing. The State concedes that the trial court erred by not holding a resentencing hearing.

{¶ 25} Because a 4-year prison term is not authorized by law, Taylor's original sentence is illegal and therefore void. *Compare State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 10 (saying that "if a trial court imposes a sentence that is unauthorized by law, the sentence is void"). Taylor is entitled to a new sentencing hearing. *Compare State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 105 (saying that a defendant whose sentence is void is entitled to a new sentencing hearing under R.C. 2929.19, unless the parties stipulate to the sentencing court's acting on the record before it).

{¶ 26} The fourth assignment of error is sustained.

{¶ 27} The fifth assignment of error alleges that Taylor's sentence is an abuse of the trial court's discretion. Because Taylor will be resentenced, this assignment of error is moot

---

[2] If the offender previously had been convicted of or pleaded guilty to certain offenses, a court could still impose a prison term of between 1 and 5 years. R.C. 2929.14(A)(3)(a).

and will not be reviewed. *Accord* App.R. 12(A)(1)(c).

{¶ 28} The sentence portion of the new judgment of conviction is vacated. *Compare State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 28 (saying that "when an appellate court concludes that a sentence imposed by a trial court is in part void, only the portion that is void may be vacated or otherwise amended"). The rest of the judgment is affirmed. This case is remanded for a new sentencing hearing.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
David R. Miles
Hon. Michael A. Buckwalter